UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mary Baehr,

        Plaintiff,

v.                                          MEMORANDUM OPINION
                                               AND ORDER
                                            Civil No. 03-5458

Northwest Airlines, Inc.,

        Defendant.

_____

      Leslie L. Lienemann, Cuthberth, Lienemann & Stratton, LLP for and on behalf of Plaintiff.

      Tracy J. Van Steenburgh, Halleland Lewis Nilan & Johnson, P.A., for and on behalf of Defendant.

_____

This matter is before the Court upon Northwest Airline, Inc.'s ("Northwest") Motion for Summary Judgment.

Factual Background

Plaintiff was employed at Northwest from July 1985 to September 2002. She began her employment as a Customer Service Agent ("CSA"), was promoted to Customer Service Supervisor ("CSS"), and was again promoted to Customer Service Manager ("CSM") in July 1999.

When she was first promoted to the CSM position, Plaintiff reported to Steve Smith, who at the time was the Director of Customer Service. In July 2002,

Andrew Zarras became the Director of Customer Service, replacing Smith.

In August 2002, a customer complained about a CSS, Deborah Livecche, who allegedly directed an obscene gesture towards the customer.  When Zarras was apprised of the incident, he disqualified Livecche as a CSS, meaning she could continue working as a CSA or take time off pending review by a board of review.  Plaintiff did not supervise Livecche, and played no part in the discipline.

Nonetheless, Northwest asserts that Plaintiff called Livecche to provide her moral support and to allegedly tell her that she did not think Livecche deserved the disqualification.  Plaintiff is also alleged to have talked with another CSM, Lee Buchanan, telling her that she had recommended to someone that a review board be impaneled.  Plaintiff is also alleged to have said that if she were on the review board, Zarras' decision would be overturned.

Northwest asserts that Buchanan had concerns that Plaintiff was trying to undermine Zarras' decision, so she talked with Smith about her conversation with Plaintiff.  Smith later reported to Zarras what Buchanan had said about Plaintiff.  Zarras was very concerned with the reports that Plaintiff was attempting to go behind his back regarding a disciplinary action, and he discussed the matter with Human Resources.  Together, Zarras and HR Generalist Chris Picha spoke with Plaintiff in order to determine what Plaintiff had in fact said to Livecche or to the Union.  Plaintiff admitted calling Livecche, but was evidently vague in her

2

response as to what was said. Plaintiff denied having discussed Zarras' decision or a review board with Livecche. Plaintiff also admitted to calling the Union, but stated she called the Union about a lot of things, but denied making the statements attributed to her by Buchanan.

Picha independently interviewed Buchanan, who confirmed what she had told Smith and Zarras about her conversations with Plaintiff. On September 17, 2002, Zarras terminated Plaintiff's employment for conduct unbecoming a manager. Northwest asserts the decision was based on the fact that Plaintiff admitted to calling Livecche and the Union, and on Buchanan's statements.

It is Plaintiff's position that after Livecche was disciplined, another CSM, Catherine Easler, told Plaintiff that Livecche was extremely upset, and asked if Plaintiff would call her. Plaintiff did so, telling Livecche that she appreciated her honesty in admitting her mistake. Plaintiff also states that she called the Union to discuss whether any formal steps had been taken with regard to the review process, as that would effect her ability to schedule the employees she supervised.

After Zarras announced his decision to discipline Livecche at the normal Thursday staff meeting, Plaintiff states that Buchanan had approached Plaintiff and had asked her what she thought of the discipline. Plaintiff asserts that she told Buchanan that she thought Zarras would reconsider his actions. Plaintiff points out that Zarras did overturn his decision to disqualify Livecche a short time

later.

Plaintiff further states that Zarras sent an e-mail to Vice President Joe Taney regarding Plaintiff's alleged conduct, and that the subsequent e-mail communications indicated that the decision to terminate Plaintiff's employment was made prior to either of them speaking with Plaintiff.

At the meeting attended by Plaintiff, Zarras and Picha prior to Plaintiff's termination, Plaintiff states that Zarras asked her whether she had called him an "idiot", to which she responded that she did not recall saying that, and that it would not be very smart to say something like that. Plaintiff did admit that she called the Union, but that Zarras did not ask Plaintiff the content of that conversation. Zarras nonetheless told Taney that Plaintiff denied contacting the Union.

When the decision to terminate Plaintiff was made, Plaintiff states that no one interviewed Livecche or the union representative that Plaintiff had spoken to determine whether Plaintiff had made any inappropriate comments to them about Zarras' decision to discipline Livecche. It is Plaintiff's position that her termination was motivated by gender discrimination, as other, similarly situated male managers have not been terminated for engaging in conduct warranting discipline.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

In employment discrimination cases, the Eighth Circuit has held that summary judgment should rarely be granted "because intent is often the central issue and claims are often based on inference."  Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005)(citing cases).  Only where the evidence does not support any reasonable inference of discrimination should summary judgment be granted. Id. (citing, Lynn v. Deaconess Med. Ctr - West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998)).

Analysis

1.  Direct Evidence Standard

To establish an employment discrimination claim under either Title VII or the Minnesota Human Rights Act ("MHRA"), Plaintiff must either present direct evidence of discrimination, or if no such evidence exists, then Plaintiff can establish a discrimination claim using the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Peterson, 406 F.3d at 521; See also, Continental Can Co. v. State, 297 N.W.2d 241, 246 (Minn.1980)(recognizing that principles developed by federal courts in Title VII cases are instructive and may be applied when interpreting the Minnesota Human Rights Act.)  In opposition to Northwest's motion for summary judgment, Plaintiff argues that she has presented direct evidence of gender discrimination. Specifically, she asserts the fact that similarly situated males were treated more favorably differently is direct evidence of gender discrimination.

Direct evidence has been defined as evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motived the adverse employment action.  Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).  Direct evidence of discrimination thus refers to the causal strength of such evidence, and is evidence that "clearly points to the presence of an illegal motive".  Id.  The Court finds, however, that the evidence

presented by Plaintiff does not constitute "strong" evidence of gender discrimination.

To support her claim that similarly situated males were treated more favorably than women, Plaintiff cites to her deposition testimony in which she stated "I believe . . . that Mr. Taney did not afford me the same opportunity that he has afforded other male managers that have worked in Joe's station."  Plaintiff Dep. ¶. 129-130.  However, Plaintiff's subjective belief that male managers were treated more favorably than women, without more, is not strong evidence of discrimination.

Nor can the supporting evidence presented by Plaintiff be considered direct evidence of discrimination.  To demonstrate that similarly situated male managers were treated more favorably than her, Plaintiff has the burden of demonstrating that the male managers were similar  "in all relevant aspects to her by a preponderance of the evidence."  Clark v. Runyon 218 F.3d 915, 918 (8th Cir. 2000).  "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  Id. (citation omitted).  Plaintiff has failed to meet this burden.

In this case, the decision to terminate Plaintiff was made by her supervisor, Andrew Zarras, which decision had to be approved by his superior, Joe Taney.

Zarras Dep. 83; Taney Dep. 30.  Taney approved the decision to terminate Plaintiff's employment based on the information provided him by Zarras. Taney Dep. 30.  None of the male managers identified by Plaintiff, however, were supervised by Andrew Zarras.

Plaintiff seems to argue that Taney was involved in all decisions involving the identified male managers, as well as Plaintiff herself.  Assuming this is true, the evidence nonetheless does not constitute direct evidence of discrimination because with one exception, the male managers identified by Plaintiff did not engage in the same or comparable misconduct.

One was found to have asked inappropriate questions during an investigation focusing on gender and race, and was required to attend training as a result.  Van Steenburgh Affidavit, Ex. K.  Another employee was accused of sexual harassment, misuse of a company credit card, harassment, poor performance and having an affair with a subordinate.  Smith Dep. ¶. 66, 68-70; Van Steenburgh Aff., Ex. N.  Investigations conducted thereafter did not substantiate any of the allegations, however. Id.; Hemmelman Exs. 18-20.  Finally, a male manager admitted to viewing pornographic material on his computer, for which he was disciplined in the form of two weeks unpaid suspension, and a warning that such future conduct would warrant termination.  Taney Dep. p. 59, Hemmelman Ex. 23.

The remaining manager identified by Plaintiff was terminated after an investigation substantiated accusations that he harassed another manager, attempted to undermine his Director's authority, and left work early.  Picha Dep. p. 79.  He was also found to have lied during the investigation.  Id.  It thus appears that the one male manager identified that actually engaged in the same or comparable "misconduct" as Plaintiff was not treated more favorably; both were terminated.

2.  McDonnell Douglas Standard

The three-step, burden shifting analysis set forth in McDonnell Douglas provides that a plaintiff must first establish a prima facie case of discrimination. If this step is met, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff, who must prove that the employer's reason is a pretext for discrimination.

Northwest argues it is entitled to summary judgment as Plaintiff has also failed to establish a prima facie case of disparate treatment.  The elements of a prima facie case are: 1) plaintiff is a member of a protected class; 2) plaintiff was qualified for the job; and 3) she suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000).  There is no dispute

that Plaintiff is a member of a protected class and that she suffered an adverse employment action.  Northwest does challenge whether Plaintiff was qualified for the job, and whether her termination occurred under circumstances giving rise to an inference of discrimination.

To establish whether she was qualified for her job, Plaintiff "must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectations."  Whitley, 221 F.3d at 1055.  Northwest argues that Plaintiff was not performing her job at a level that met her employer's legitimate expectations as evidenced by the fact that she acted to undermine her supervisor's authority.  Plaintiff challenges whether she did, in fact, engage in such conduct.  Given Plaintiff's otherwise spotless employment record at Northwest, there is, at the very least, a genuine issue of material fact as to whether she was qualified for the position.

Northwest next argues that Plaintiff has failed to establish that she was terminated under circumstances giving rise to an inference of gender discrimination.  As discussed above, the Court agrees that Plaintiff has failed to demonstrate that similarly situated male employees were treated more favorably.  Plaintiff has, however, demonstrated that she was replaced by a male.  For purposes of establishing a prima facie case, such evidence is sufficient.  Johnson v. Baptist Medical Center, 97 F.3d 1070, 1072 (8th Cir. 1996) (plaintiff can establish

prima facie case by showing she was replaced by someone outside of her protected class.)

Plaintiff does not dispute that Northwest has met its burden under the three-part test by asserting a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's employment. To survive summary judgment, Plaintiff must raise a genuine issue of material fact as to pretext; whether the articulated reason is a pretext for unlawful gender discrimination. The Court finds that Plaintiff has failed to do so.

The fact that Plaintiff was replaced by a male, without more, does not raise a reasonable inference that Northwest's articulated reason for her termination is a pretext for gender discrimination. Plaintiff has provided no evidence that the decision-makers, Zarras and Taney, possessed a discriminatory animus toward women. The record does not include any reference to any comments either made that would suggest a discriminatory animus. And although Plaintiff has challenged the facts behind the decision to terminate her, there is nonetheless no evidence to suggest her termination was a result of gender discrimination. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." <u>Palesch v. Missouri Commission on Human Rights</u>, 233 F.3d 560, 568 (8th Cir. 2000). The Court finds that Plaintiff has failed to demonstrate a

genuine issue of material fact that she was the victim of intentional discrimination.

IT IS HEREBY ORDERED that Northwest Airline, Inc.'s Motion for Summary Judgment [Doc. No. 28] is GRANTED and this case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: July 15, 2005

                                                    s/ Michael J. Davis
                                                   Michael J. Davis
                                                   United States District Court